UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CASSIUS BEECHAM,

    Plaintiff,

  v.

HOMEQ, FIDELITY NATIONAL TITLE COMPANY, DEUTSCHE BANK NATIONAL TRUST, and DOES 1-50, inclusive,

    Defendants.
_____/

NO. CIV. 2:09-1375 WBS JFM

<u>MEMORANDUM AND ORDER RE:
MOTION TO DISMISS AND ORDER TO
SHOW CAUSE</u>

----oo0oo----

        Plaintiff Cassius Beecham brought this action in state court against defendants HomEq, Fidelity National Title Company, and Deutsche Bank National Trust ("Deutsche Bank") alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617; the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788.1-1788.33; and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210, as

well as claims for breach of contract, breach of the implied covenant of good faith and fair dealing, wrongful foreclosure, breach of fiduciary duty, and fraud.  Defendants subsequently removed the action to this court. After plaintiff filed an Second Amended Complaint that no longer asserted any federal claims, the court issued an order to show cause why this action should not be remanded to the state court.

I.   Factual and Procedural Background

Plaintiff is a borrower who obtained two purchase money mortgage loans from Deutsche Bank on January 29, 2007.  (Defs.' Mot. Dismiss 1:7-9.)  Plaintiff secured the loans by deeds of trust on a property located at 180 Caravaggio Street, Sacramento, California, which he purchased using the funds from the loans.  (Second Am. Compl. 4:1-5.)  Plaintiff alleges that he expressed concerns about his ability to pay the loans, but was allegedly told by a Deutsche Bank loan officer that plaintiff could refinance to a lower interest rate and payment after one year.  (Id. at 3:23-28.)  Plaintiff also claims Deutsche Bank approved plaintiff's loans despite its knowledge that he was unqualified to obtain them.  (Id.)  Plaintiff allegedly did not receive disclosures required by law concerning the terms of the loan and his right to cancel at the time of the loan transaction.  (Id. at 5:17-22.)

Plaintiff was unable to continue making payments on his loans, and defendant HomEq, the servicer of his loans, allegedly did not respond to plaintiff's requests modify his payments.  (Id. at 4:7-9.)  A Notice of Default was filed against plaintiff in Sacramento County, and plaintiff claims he subsequently

2

received a Notice of Trustee Sale in November 2008 which stated that Fidelity National, no longer a party to this action, would institute a foreclosure sale on plaintiff's property.[1]  (Id. at 5:23-27.)  Plaintiff argues that this notice was inadequate because he was not supplied the time or location of the sale.  (Id.)  Plaintiff also alleges that defendants were not entitled to foreclose on his property because defendants sold the note on his home to "other financial entities" which then sold securities based off of "pooled" trusts of home loans.  (Id. at 6:5-16.)

Plaintiff filed this action in state court on March 11, 2009.  (See Notice of Removal Ex. A ("First Amended Complaint"[2]).)  Defendants subsequently removed the action to this court under 28 U.S.C. § 1331 on the basis of plaintiff's federal causes of action.  (Notice of Removal ¶¶ 8-10.)

---

[1] While plaintiff alleges in his Amended Complaint that a Notice of Default was filed in November 2008, documentation presented by defendants indicates a Notice of Default was filed on July 23, 2008.  (See Defs.' Req. for Judicial Notice Ex. 2.)  The court may look outside of the complaint when determining if it has subject matter jurisdiction over a claim.  See Biotics Research Corp. v. Heckler, 710 F.2d 1375, 1379 (9th Cir. 1983).  Plaintiff has not disputed the documents defendants have submitted.  Additionally, both parties state that the foreclosure sale occurred in November 2009, an obvious impossibility. The court will assume that the parties mean to state that the sale occurred on November 14, 2008, as per the documentation presented by defendants. (See Defs.' Req. for Judicial Notice Ex. 3.)

[2] There is a degree of confusion surrounding the number of amendments to plaintiff's complaint.  The parties alternate between referring to the first complaint this court received in the Order of Removal as the "Original Complaint," and the "First Amended Complaint," as indicated on the complaint's cover page.  The parties have labeled the second complaint received by the court as both the "Amended Complaint" and "Second Amended Complaint."  For the purposes of this Order, the complaint received by this court in the Order of Removal shall be referred to as the "First Amended Complaint" and the amended complaint received by this court shall be referred to as the "Second Amended Complaint."

3

1         On June 19, 2009, plaintiff filed his Second Amended
2  Complaint that eliminated his federal causes of action and
3  alleged only violations of the Rosenthal Fair Debt Collection
4  Practices Act and California's Unfair Competition Law, as well as
5  state law claims for breach of contract, breach of the covenant
6  of good faith and fair dealing, breach of statutory duties,
7  conversion, and wrongful foreclosure.  (See Second Am. Compl.)
8  On July 9, 2009 defendants filed a Motion to Dismiss the Second
9  Amended Complaint.  (Docket No. 11.)
10        In light of plaintiff's abandonment of his federal
11 claims, on August 27, 2009, the court issued an order to show
12 cause why this action should not be remanded to state court.
13 (Docket No. 14.)  In response, plaintiff indicated that he did
14 not oppose remand.  Defendants argue that the court should retain
15 jurisdiction because plaintiff's claims are completely preempted
16 by federal law and plaintiff's references to the federal TILA and
17 RESPA in the "Factual Background" of his Second Amended Complaint
18 give rise to substantial federal questions.
19 II.  Discussion
20        "Under 28 U.S.C. § 1441, a defendant may remove an
21 action filed in state court to federal court if the federal court
22 would have original subject matter jurisdiction over the action."
23 Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1243 (9th
24 Cir. 2009).  Federal courts have original subject matter
25 jurisdiction over "all civil actions arising under the
26 Constitution, laws, or treaties of the United States."  28 U.S.C.
27 § 1331.
28        "[J]urisdiction must be analyzed on the basis of the

4

pleadings filed at the time of removal without reference to subsequent amendments . . . ." Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (quoting Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, 159 F.3d 1209, 1213 (9th Cir. 1998)). Nonetheless, when removal is based on federal question jurisdiction and all federal claims drop from the proceedings, "[i]t is generally within a district court's discretion either to retain jurisdiction to adjudicate the pendent state claims or to remand them to state court." Harrell v. 20th Century Ins. Co., 934 F.2d 203, 205 (9th Cir. 1991) (citing Price v. PSA, Inc., 829 F.2d 871, 876 (9th Cir. 1987)). A district court may consider sua sponte whether to remand pendent state claims to state court. Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000-01 (9th Cir. 1997) (en banc).

    A. Complete Preemption

        To determine whether an action "arises under" federal law, courts apply the "well-pleaded complaint rule," which provides that "a claim arises under federal law 'only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" Moore-Thomas, 553 F.3d at 1243 (quoting Valles v. Ivy Hill Corp., 410 F.3d 1071, 1075 (9th Cir. 2005)). As a corollary to the well-pleaded complaint rule, the "complete preemption doctrine" instructs that Congress "may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Id. (quoting Toumajian v. Frailey, 135 F.3d 648, 653 (9th Cir. 1998)) (internal quotation marks omitted). Under this doctrine, "if a federal cause of action completely preempts a

5

state cause of action[,] any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 24 (1983). In such cases, "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1107 (9th Cir. 2000) (citations and internal quotation marks omitted). Ordinary preemption, on the other hand, is a federal law defense to a state law claim and is therefore "insufficient to confer federal jurisdiction if the complaint on its face does not present a federal question." Moore-Thomas, 553 F.3d at 1244 (citing Valles, 410 F.3d at 1075).

A finding of complete preemption is rare, and so far the Supreme Court has only identified § 301 of the Labor Management and Relations Act, 29 U.S.C. § 185; § 502 of the Employee Retirement and Income Security Act of 1974, 29 U.S.C. § 1132; and §§ 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85-86, as federal statutes that completely preempt state claims. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6-11 (2003). Whether a statute completely preempts state law depends on "whether Congress intended the federal cause of action to be exclusive." Id. at 9 n.5. The Ninth Circuit has articulated that "[t]he test is whether Congress clearly manifested an intent to convert state law claims into federal question claims." Ansley v. Ameriquest Mortg. Co., 340 F.3d 858, 862 (9th Cir. 2003) (quoting Wayne v. DHL Worldwide Express, 294 F.3d 1179, 1184 (9th Cir. 2002)).

6

Defendants assert that the court has subject matter jurisdiction over this case because plaintiff's claims are completely preempted by the Home Owners Loan Act ("HOLA"), 12 U.S.C. §§ 1461, and a regulation made by the Office of Thrift Supervision ("OTS") pursuant to HOLA, 12 C.F.R. § 560.2.  To prove that plaintiff's state claims are completely preempted, defendants rely heavily on the language of 12 C.F.R. § 560.2(a), which provides that,

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform scheme of regulation.  Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part.

Federal regulations, such as § 560.2, "have no less preemptive effect than federal statutes." Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1005 (9th Cir. 2008) (citing Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982)).  Regardless, § 560.2(c) makes it clear that § 560.2 does not preempt state law claims "to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section."  12 C.F.R. § 560.2(c).  Such state claims include those that originate from contract and commercial law, real property law, homestead laws, tort law, criminal law, and any law that OTS finds "[f]urthers a vital state interest; and [e]ither has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this

7

section." Id.

§ 560.2(b) does identify that state laws related to "loan-related . . . fees" and "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" are preempted, however, this does not mean that HOLA is the exclusive cause of action for plaintiff's claims. 12 C.F.R. § 560.2(b). Rather, as other District Courts in California have found, OTS's regulations do not have the unusual preemptive force necessary to find complete preemption because they explicitly exempt certain categories of state claims from the scope of § 560.2(a). See Bolden v. KB Home, 618 F. Supp. 2d 1196, 1204-05 (C.D. Cal. 2008); Barela v. Downey Sav. & Loan Ass'n, No. CV 09-3757, 2009 WL 2578889, at *3 (C.D. Cal. Aug. 18, 2009). Section 560.2's exemptions for numerous state claims indicate that HOLA by no means provides the exclusive cause of action for plaintiff's claims and does not have the "unusually 'powerful' preemptive force" that permits removal of state law claims that fall within its regulations. See Beneficial Nat'l Bank, 539 U.S. at 6 (quoting Franchise Tax, 463 U.S. at 23-24). OTS has made its intent to limit the preemptive scope of § 560.2 clear in the text of its regulation, rather than an intent to create an exclusively federal cause of action.

This court is especially wary of holding that Congress intended for HOLA to convert state law contract, fraud, and wrongful foreclosure claims related to mortgages into federal claims when the basis for complete preemption is a regulation promulgated by an agency of the executive branch. See Barela, 2009 WL 2578889, at *3. While such regulations certainly can

8

have the same effect as a congressional statute, they are a shaky foundation from which to find a Congressional intent to mandate the application of a seldom applied doctrine.

At best, defendants have articulated an "ordinary" preemption defense, but have not demonstrated that HOLA has such a broad preemptive scope as to completely preempt plaintiff's state claims. See, e.g., ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envntl. Quality of Mont., 213 F.3d 1108, 1114 (9th Cir. 2000) (citing Toumajian, 135 F.3d at 655). HOLA may preempt state civil remedies for impropriety of fees, disclosures, and alleged misconduct at loan origination, but an ordinary federal preemption defense to a state law claim is an insufficient basis for federal question jurisdiction. Moore-Thomas, 553 F.3d at 1244 (citing Valles, 410 F.3d at 1075). This court concludes that HOLA does not completely preempt plaintiff's claims, and accordingly does not provide a basis for federal jurisdiction.

Defendants also cite to Beneficial National Bank and two district court cases that they claim prove that state law claims based on allegations of excessive finance are completely preempted and removable to federal court. (Defs.' Resp. to Order to Show Cause 8:14-25.) These cases are inapposite. In Beneficial National Bank, the Supreme Court found that the National Bank Act provides for the exclusive federal cause of action for usury against a national bank. Beneficial Nat'l Bank, 539 U.S. at 10. Similarly, in Taylor v. Wells Fargo Home Mortgage, No. 04-0841, 2004 U.S. Dist. LEXIS 6910 (E.D. La. Apr. 19, 2004), and Phipps v. Guaranty National Bank of Tallahassee,

No. 03-420-CV-W-GAF, 2003 U.S. Dist. LEXIS 16984, (W.D. Mo. Sept. 17, 2003), plaintiffs were litigating claims of illegitimate and excessive fees and charges accrued on their loans, which were found to be preempted under the National Bank Act.  See Taylor, 2004 U.S. Dist. LEXIS 6910, at *8-10; Phipps, 2003 U.S. Dist. LEXIS 16984, at *13-20.  Unlike the claims in Taylor and Phipps, plaintiff's claims are not simply usury claims in disguise. Plaintiff does not allege that he was charged excessive fees on his loan.  Rather, plaintiff contends that defendants knowingly induced plaintiff into acquiring a loan he could not pay, did not give him the required disclosures for his mortgage, foreclosed on his home without being the true owners of note on his property, and provided inadequate notice of foreclosure to him.  Since plaintiff's claims do not rely upon a claim of usury to succeed, they are not preempted by §§ 85 and 86 of the National Bank Act. Accordingly, the court finds plaintiff's claims are not completely preempted by federal law.

### B. Substantial Federal Question

A case "arises under" federal law when federal law either creates the cause of action or a state law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibility."  Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005); see Franchise Tax, 463 U.S. at 27-28.  When a plaintiff only pleads state causes of action, "original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of

10

federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law.  Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1383 (9th Cir. 1988) (citing Franchise Tax, 463 U.S. at 13).

In this case, plaintiff amended his complaint such that no causes of action are created by federal law.  It is well-established that the plaintiff is the "master of the complaint" and that a "plaintiff is entitled to file both state and federal causes of action in state court" then "settle certain claims or dismiss them" after a case is removed to encourage remand. Baddie v. Berkeley Farms, Inc., 64 F.3d 487, 490 (9th Cir. 1995). It is within the discretion of this court to remand the case to state court so long as plaintiff's state law claims no longer pose an actual and substantial federal question.  See Acri, 114 F.3d at 1000-01.

In his Second Amended Complaint, plaintiff refers to defendants' violations of TILA and RESPA in the "Factual Background" section and contends that he was not given adequate disclosures under TILA and had no response to his Qualified Written Request pursuant to RESPA.  It is a "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Lippitt v. Raymond James Fin. Servs., 340 F.3d 1033, 1040 (9th Cir. 2003) (quoting Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808 (1986)).  A substantial federal question does not exist simply because a complaint makes a mere reference to a federal statute.  Id. at 1040-41; see also

11

1  Rains v. Criterion Sys. Inc., 80 F.3d 339, 344 (9th Cir. 1996)
2  (references to Title VII are insufficient to establish federal
3  jurisdiction in a wrongful termination action).  Instead, the
4  federal question must be "a <u>necessary</u> element of the well-pleaded
5  state claim" or the plaintiff's right to relief must rely on the
6  resolution of a substantial, disputed question of federal law.
7  Id. at 1042.

8      Plaintiff's references to TILA and RESPA in the
9  "Factual Background" section of his Second Amended Complaint have
10 little bearing on the actual state law causes of action pled in
11 the complaint.  Plaintiff does not, for example, rely upon a
12 violation of TILA to prove any elements of any of the state
13 claims presented.  Instead, plaintiff bases his claims on
14 allegations of inadequate notice of foreclosure by defendants
15 under California law, defendants' lack of a legal right to
16 foreclose his property, a failure of defendants to comply with
17 the mortgage documents, and alleged misleading promises that
18 defendants would assist plaintiff in refinancing his mortgage.
19 Defendants' alleged violations of TILA and RESPA are not
20 mentioned outside of the "Factual Background" section of the
21 Second Amended Complaint.  While this may be sloppy pleading on
22 the part of plaintiff, "[t]he appropriate punishment for bad
23 pleading is the striking of surplusage, not removal to federal
24 court where no remedy exists."  Id. at 1041.  On the face of the
25 Second Amended Complaint there is no substantial, disputed
26 question of federal law.

27     Even if some of plaintiff's claims seek to invoke the
28 provisions of TILA or RESPA, defendant has not shown that any

12

federal issue, if raised at all, is substantial.  Plaintiff's claims are not dependent on proving that defendant violated TILA or RESPA.  Each claim presented by plaintiff has an independent basis in state law.  This is fatal to defendants' contention that federal jurisdiction exists, since "[t]he invocation of federal law as a basis for establishing an element of a state law cause of action does not confer federal question jurisdiction when the plaintiff also invokes a state constitutional provision or a state statute that can and does serve the same purpose."  Rains, 80 F.3d at 345.

All of plaintiff's claims could be resolved without any reference to TILA or RESPA.  Plaintiff's breach of contract and duty of good faith and fair dealing claims could be resolved solely by proving that defendants failed to comply with the terms of the mortgage agreement and common law principles of contract.  Similarly, plaintiff's claim for breach of statutory duties and wrongful foreclosure could be proved by demonstrating that defendants failed to comply with the terms of the mortgage documents and California law of foreclosure.  The claim under California's Unfair Competition law does not require proof of violation of TILA or RESPA, rather plaintiff only needs to show that defendants engaged in a business practice that was unlawful or "unfair" because it offends an established public policy, is immoral, unethical, oppressive, injurious to customers, or unscrupulous.  Wilmer v. Sunset Life Ins., 78 Cal. App. 4th 952, 964 (2000); People v. Casa Blanca Convalescent Homes, Inc., 159 Cal. App. 3d 509, 530 (1984).  Finally, plaintiff's claim of Rosenthal Act violations has no relationship to defendants'

13

alleged violations of TILA and RESPA.[3]  Since plaintiff can prove all his claims independently under state law, an application of federal law is not a substantial or "necessary element" of plaintiff's claims.  See In re Countrywide Fin. Corp. Mortg. Marketing & Sales Practices Litig., No. 08md1998, 2008 WL 5450351, at *4 (S.D. Cal. Dec. 30, 2008) (finding no substantial federal question where TILA and RESPA did not need to be applied to resolve plaintiff's claims); Fardella v. Downey Sav. & Loan Ass'n, No. 00-4394, 2001 WL 492442, at *3 (N.D. Cal. May 9, 2001) (finding no federal question jurisdiction because plaintiff could prove allegedly unfair broker rebate violated California law independently of RESPA or TILA).

        The only claim in the Second Amended Complaint that may require the court to construe a federal statute is plaintiff's claim for wrongful foreclosure.  In the Second Amended Complaint, plaintiff alleges that defendants are subject to the United States Treasury guidelines pursuant to the Emergency Economic Stabilization Act of 2008, H.R. 1424 Title I, §§ 109-110, which plaintiff contends requires recipients of capital investments under the Troubled Asset Relief Program ("TARP") to suspend foreclosure actions while borrowers are considered for alternative foreclosure prevention options.  In evaluating whether it has subject matter jurisdiction, the court may look

---

[3] Plaintiff's claim for conversion was not a part of the court's analysis because plaintiff indicated his intention to waive this claim in his Opposition to Defendant's Motion to Dismiss.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss 5:13-14.) Regardless, plaintiff's claim does not turn on federal law, but rather the illegitimacy of the foreclosure sale of plaintiff's property under California law.

14

outside of the complaint for facts relevant to its determination. See Biotics, 710 F.2d at 1379.

Assuming this claim presents a federal question, plaintiff has no evidence that defendants received any funds from TARP, and as noted by defendants, the document that plaintiff claims indicates defendants received TARP funds conspicuously lacks either defendant as a listed recipient of funds. (Defs.' Req. for Judicial Notice Ex. 5 at 16-27.) Additionally, plaintiff's house was foreclosed upon in November 2008, long before the enactment of the guidelines on March 4, 2009, that plaintiff believes entitled him to a stay of foreclosure.[4]

Courts may find a lack of federal question jurisdiction if a "claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Lone Star Sec. & Video, Inc., v. City of Los Angeles, 572 F.3d 685, 692 (9th Cir. 2009) (internal quotations omitted); see Yokeno v. Mafnas, 973 F.2d 803, 808-09 (9th Cir. 1992) (no jurisdiction where it was plain from statutory enactments that claim was without merit); Brock v. Writers Guild of Am., W., Inc., 762 F.2d 1349, 1352 n.3 (9th Cir. 1985) (finding a district court can decline federal jurisdiction when a claim is "patently without merit"). Plaintiff was clearly

---

[4] The Home Affordable Modification Program Guidelines that plaintiff cites specifically state that "Trial loan modifications consistent with these Guidelines may be offered to homeowners beginning on this date, March 4, 2009 . . . ." U.S. Department of Treasury, Home Affordable Modification Program Guidelines, March 4, 2009, www.treas.gov/press/releases/reports/modification_program_guidelines.pdf. This eliminates the possibility that the Guidelines could apply to plaintiff's foreclosure.

15

not entitled to the benefits of the Treasury regulation because his house was foreclosed upon before the guidelines and defendants did not receive TARP funds.  The federal issue in plaintiff's foreclosure claim is wholly insubstantial and frivolous, and therefore cannot provide a basis for jurisdiction in this court.

A number of other factors cut against finding that a substantial federal question exists in this case.  First, there appears to be no dispute as to the meaning of either TILA or RESPA that needs to be resolved by this court.  Plaintiff only claims that he did not receive the required TILA disclosure forms, and there is no dispute as to the meaning of RESPA.  See In re Countrywide Fin. Corp., 2001 WL 491442 at *3 (finding a lack of dispute as to the meaning of RESPA or TILA one reason a substantial federal question did not exist).

Second, exercising jurisdiction over this case would disturb the congressionally approved balance of federal and state responsibilities.  The federal courts do not have exclusive jurisdiction over TILA or RESPA claims, rather Congress has allowed for concurrent jurisdiction over these disputes.  See 15 U.S.C. § 1640(e); 12 U.S.C. § 2614.  This indicates a congressional intent that federal and state responsibilities over TILA and RESPA be shared.  Were this court to find federal jurisdiction whenever a TILA or RESPA violation was incidentally involved in a claim otherwise created by state law, the federal courts could be faced with a flood of cases that would upset the balance approved by Congress.  See Wagner v. Wisc. Auto Title Loans, 584 F. Supp. 2d 1123, 1126 (E.D. Wis. 2008); Evans v.

1  Courtesy Chevrolet II, LP, 423 F. Supp. 2d 669, 672 (S.D. Tex.
2  2006). This concern requires this court to exercise the
3  "possible veto" discussed in Grable by finding a lack of federal
4  question jurisdiction in this case. Grable 545 U.S. at 313.

     C. Supplemental Jurisdiction

         Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). The court's discretion to decline jurisdiction over state law claims is informed by the values of judicial economy, fairness, convenience, and comity. Acri, 114 F.3d at 1001 (citations omitted). In addition, "[t]he Supreme Court has stated, and [the Ninth Circuit] ha[s] often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). Since plaintiff's Second Amended Complaint lacks any independent basis for federal question jurisdiction, this court must now consider whether it is appropriate to exercise supplemental jurisdiction over plaintiff's state claims even though all federal claims have been eliminated from the matter.

         Defendants have OFFERED no justification for federal jurisdiction that would lead this court to disregard the Supreme Court's warning that the balance of factors normally points toward declining to exercise jurisdiction over pendent claims after all federal claims have been eliminated from a complaint.

17

Carnegie-Mellon, 484 U.S. at 350 n.7.  Considerations of comity weigh heavily in favor of remand.  All remaining claims arise under state law.  There is no reason for this court to continue to hear this action when the state court is equally competent to hear the case and likely has a better grasp of the law of its own forum.  The principle of comity therefore favors deference to the state court.

Concerns of judicial economy do little to sway the court to exercise jurisdiction.  The motions currently before the court are the first substantive motions in this case and the court has had very little involvement in the matter thus far.  There is no prevailing reason for this court to maintain jurisdiction to preserve judicial economy.

Finally, considerations of convenience and fairness do not weigh in favor of maintaining jurisdiction over this matter.  Both the state and federal fora are located in Sacramento, only blocks from one another, making both equally convenient for the parties.  As for fairness, there is no reason to doubt that the state court will provide an equally fair adjudication of the matter.  In an exercise of discretion, the court finds that the state law causes of action should be remanded to the Sacramento County Superior Court.

D. Sanctions

In the court's September 8, 2009, Order re: Scheduling plaintiff was on notice that a hearing on the court's Order to Show Cause and defendants' motion to dismiss would take place on September 28, 2009.  Plaintiff's counsel Jonathan Stein failed to appear at the hearing.  When contacted by the Clerk of the court

on the hearing date, Stein explained that the hearing coincided with Yom Kippur and he did not have the hearing written on his calendar. Notwithstanding the religious holiday, plaintiff's counsel was in fact on notice of the hearing and did not so much as call any conflict to the attention of the court, request a continuance, or ask to make a telephonic appearance. This resulted in opposing counsel being unnecessarily required to appear before the court. Federal Rule of Civil Procedure 16(f)(1)(C) provides that "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."

     IT IS THEREFORE ORDERED that defendant's motion to dismiss be, and the same hereby is, DENIED as moot; and plaintiff's case be, and the same hereby is, REMANDED to Superior Court of the State of California in and for the County of Sacramento.

     IT IS FURTHER ORDERED that within fourteen days of the date of this Order, Jonathan Stein shall either (1) pay sanctions in the amount of $150.00 to the Clerk of the Court; or (2) submit a statement showing good cause for his failure to comply with the court's Order of September 8, 2009.

DATED: October 1, 2009

_[signature]_
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE